IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

```
-----------------------------------------------   :
                                                  : CASE NO. 1:04 CV 0546
SELENA REED,                                      :
                                                  :
                                  Plaintiff,      : ORDER & OPINION ADOPTING
                                                  : REPORT AND RECOMMENDATION,
              -vs-                                : GRANTING IN PART AND DENYING IN
                                                  : PART DEFENDANTS' MOTION FOR
CITY OF CLEVELAND, et al.                         : SUMMARY JUDGMENT
                                                  :
                                  Defendants.     :

-----------------------------------------------
```

UNITED STATES DISTRICT JUDGE LESLEY WELLS

        Before the Court is the defendants' motion for summary judgment.  (Docket No.

37).  This case stems from the death of Brandon Robinson, who passed on 18 January

2004 as a result of a gunshot wound.  (Docket No. 1).  Plaintiff Selena Reed is the

mother and administratrix of Mr. Robinson's estate.  The named defendants include the

City of Cleveland, Cleveland Police Officer Timothy Clark, and Cleveland Police Officer

Arneil Rose.   Only one of these officers is directly responsible for causing Mr.

Robinson's death, although both officers were with the decedent at the time of his

death.

        Ms Reed's complaint raises seven causes of action: (1) a § 1983 claim asserting

the right to be free from unreasonable seizure and deadly force against Officers Clark

and Rose; (2) state law conspiracy claims against Officers Clark and Rose; (3) a § 1983

claim as against the City of Cleveland for failure to adequately train and supervise its

police officers; (4)  state law claims of wrongful death against Officers Clark and Rose;

(5) state law survivorship actions as against Officers Clark and Rose; (6) state law

claims of willful, wanton, and reckless conduct against Officers Clark and Rose; and (7) assault and battery claims against Officers Clark and Rose (claims 4 through 7, collectively, "state law tort claims").  (Docket No. 1, Ex. A).

United States Magistrate Judge Kenneth S. McHargh issued a Report and Recommendation ("R&R") on 6 September 2006, recommending that the defendants' motion be denied in part and granted in part.  (Docket No. 49).

For the reasons set forth below, the Court will adopt the recommendations of the R&R.  The Court will deny Officer Clark relief on his assertion of insufficient service.  Summary judgment will be granted with respect to the conspiracy claim asserted against Officers Clark and Rose and the § 1983 claim asserted against the City of Cleveland.  Upon finding a genuine issue of material fact for trial, the Court will deny the motion for summary judgment with respect to the § 1983 claims and state law tort claims asserted against Officers Clark and Rose.

## I.  BACKGROUND

### A.  Factual Background

On 18 January 2004, Brandon Robinson died from a gunshot wound to the chest.  The identity of the shooter and the actions immediately preceding and following Mr. Robinson's death are disputed by four witnesses.

Shortly before his death, Mr. Robinson and his friend Courtney Mays were sitting in Mr. Mays' vehicle on East 151st Street, Cleveland, Ohio.  (Docket No. 37, Mays Dep. at 13).  Mr. Mays was seated in the driver's seat, and Mr. Robinson was seated in

2

the front passenger seat.  Id.  Mr. Mays stated under oath on deposition that the two had purchased food at a fast-food restaurant and had pulled the car over to eat and watch a movie on a portable DVD player.  Id. at 11.  Police officers Timothy Clark and Arneil Rose received a radio assignment to investigate Mr. Mays' vehicle for possible drug activity.  (Docket No. 37, Rose Dep. at 31-32).  Upon pulling up in their police cruiser behind Mays' car, the two officers observed what they believed to be furtive movements by Mays and Robinson and, therefore, they treated the investigation as one of high risk with suspects who were possibly armed.  Id. at 37.

Officers Clark and Rose exited their cruiser and approached Mays' car with their firearms drawn, with Officer Rose approaching the driver's side and Officer Clark approaching the passenger side.  Id. at 39, 41.  Officer Rose removed Mr. Mays from the driver's side of the car and handcuffed him.  Id. at 45.  Officer Clark removed Mr. Robinson from the passenger's side of the car and took him to the rear of the car.  Id. at 47.  Before Officer Clark could handcuff him, Mr. Robinson fled from the car and officer. Id. at 49.  Officer Clark chased Mr. Robinson and tackled him from behind.  Id.  The events that took place next are recounted differently by the four witnesses: Officers Clark and Rose, Mr. Mays, and Ms Bessie Mathis, a witness.

Officer Clark recounted the following events in his deposition.  As he escorted Mr. Robinson from Mays' vehicle towards the rear of the car, Mr. Robinson "took off running." (Docket No. 54, Clark Dep. at 84).  Officer Clark chased Mr. Robinson, tackled him from behind, and the two fell to the ground and started wrestling.  Id. at 85.  During the course of the struggle, Mr. Robinson punched Officer Clark in the face and grabbed his weapon, but Officer Clark managed to grab the weapon away from Mr. Robinson

3

and then shot Mr. Robinson in self-defense.  Id. at 88, 110.  After shooting Mr.

Robinson, Officer Clark immediately holstered his weapon, held Mr. Robinson's hand,

and then, when Mr. Robinson stopped breathing, began administering CPR.  Id. at 121.

        Officer Rose testified to the following facts in his deposition.  While handcuffing

Mr. Mays, he saw Mr. Robinson flee and Officer Clark pursue and tackle him.  (Docket

No. 37, Rose Dep. at 47-48).  Upon securing Mr. Mays at Mays' vehicle, he ran to help

Officer Clark.  Id. at 49.  At that point in time, Mr. Robinson was on top of Officer Clark

straddling him.  Id. at 59.  Officer Rose reached for Mr. Robinson to pull him off Officer

Clark, but Mr. Robinson threw his elbow at Officer Rose knocking him down.  Id. at 52.

Officer Rose got up and approached Mr. Robinson again, which is when he heard the

gunshot.  Id. at 53.  He assisted Mr. Robinson in standing up, Officer Clark slid out from

underneath Mr. Robinson, and at that time Officer Rose saw the gunshot wound in Mr.

Robinson's chest.  Id. at 54-56.  After Mr. Robinson slumped to the ground, Officer

Clark immediately held Mr. Robinson's hand, but then began administering CPR when

Mr. Robinson stopped breathing.  Id. at 59-60.

        Mr. Mays recalled facts varying from those of the officers during his deposition.

Upon being handcuffed by Officer Rose, Mr. Mays state he was instructed to stay at his

vehicle, facing away from the direction Mr. Robinson had fled.  (Docket No. 37, Mays

Dep. at 16).  At one point, Mr. Mays turned to see what was going on and saw Mr.

Robinson trying to get away and Officer Clark holding onto him by the waist.  Id. at 18-

19.  He turned back and faced his car until he heard the gunshot.  Id. at 17.  At that

point, he turned to see what had happened, saw Mr. Robinson on his knees, Officer

Rose standing 3-4 feet in front of Mr. Robinson pointing his firearm at the decedent, and

4

Officer Clark on his belly behind Mr. Robinson pushing himself off the ground.  Id. at 20-21.  Mr. Mays recalled Officer Rose looking "shocked."  Id.  After the shooting, Officer Clark put Mr. Mays in the back seat of the police car and Officer Rose in the front seat of the car, telling Officer Rose, "it's going to be all right."  Id. at 23.  At that time, Officer Clark alone went to administer CPR to Mr. Robinson.  Id.

The fourth witness to the shooting was Ms Bessie Mathis, who testified to the following events.  Ms Mathis lived in a house on 151st Street near where Mr. Robinson and Officer Clark struggled and where Mr. Robinson was shot.  (Docket No. 38, Mathis Dep. at 14-19).  Although Ms Mathis could not hear the struggle or the gunshot from her home, she witnessed the chain of events from the time Mr. Robinson fled the parked car until the time he was shot.  Id.  At the time of the shooting, Officer Clark was on top of Mr. Robinson with his knee on him, and Mr. Robinson's hands were in the air.  Id.  At no point did she see Mr. Robinson on top of Officer Clark or see Mr. Robinson strike Officer Clark.  Id.  Ms Mathis did not see or hear a gun fire, but she believed Officer Rose shot Mr. Robinson because of the way he was moving his hands.  Id.

**B. Procedural Background**

On 11 March 2004, plaintiff Selena Reed filed an action in the Cuyahoga County Court of Common Pleas against defendants City of Cleveland and Officers Clark and Rose, asserting claims pursuant to 42 U.S.C. § 1983 and state law.  (Docket No. 1, Ex. A).  On 19 March 2004, a summons and complaint were sent certified mail by the Cuyahoga County Clerk of Courts to defendants City of Cleveland, Officer Timothy Clark, and Officer Arneil Rose.  (Docket No. 41, Ex.).  On that same day, the City of

5

Cleveland filed a notice to have the case removed to this Court.  (Docket No. 1).  In the removal notice to this Court, the City of Cleveland stated that neither of the police officers had been served at the time of removal.  Id.  The certified mail receipts returned to the County indicate that the City of Cleveland received its summons and complaint on 26 March 2004, Officer Clark received his summons and complaint on 22 March 2004, and that the summons and complaint sent to Officer Rose was returned because of a non-deliverable address.  (Docket No. 41, Ex.).

At plaintiff's request after removal, the Clerk of Courts for this Court issued a summons and complaint upon Officer Rose.  Officer Rose received his summons and complaint by certified mail on 9 June 2004.  (Docket No. 10).

On 28 October 2005, defendants City of Cleveland and Officers Clark and Rose filed a motion for summary judgment, moving the Court to dismiss all claims asserted by the plaintiff.  (Docket No. 37).  The motion asserts that Officer Clark shot and killed Mr. Robinson, but that he is immune from suit under the doctrine of qualified immunity.  The motion further argues that Officer Clark cannot be held liable for the state law tort claims because his act of shooting Mr. Robinson was in self-defense and therefore a privileged act.  The motion asserts that as Officer Rose, he did not shoot Mr. Robinson, so the § 1983 claim and state law tort claims must be dismissed since Officer Rose could not be held liable for an act which he clearly did not commit.  The City of Cleveland also asserts immunity under the doctrine of qualified immunity, arguing that the plaintiff failed to produce evidence of a custom, policy, or practice that demonstrates a deliberate indifference by the City towards the rights of Mr. Robinson.  Finally, the motion argues that the state law conspiracy claims as against Officers Clark and Rose should be

6

dismissed for lack of evidence.

The plaintiff filed a memorandum in opposition on 28 November 2005 (Docket No. 38), and the defendants timely replied (Docket Nos. 39-41).  In Officer Clark's reply memorandum to plaintiff's opposition, Officer Clark raised insufficient service as an additional ground for which he is entitled to summary judgment.  This defense was raised in Officer Clark's answer to the complaint (Docket No. 4) but not in the motion for summary judgment.

**C.  Report and Recommendation**

The Court referred this case to U.S. Magistrate Judge Kenneth McHargh on 29 June 2006 for a R&R.  (Docket No. 48).  Magistrate HcHargh filed his R&R on 6 September 2006, recommending the Court grant in part and deny in part the defendants' motion for summary judgment.  Specifically, the R&R recommends -

1. Dismissing the § 1983 claim as against the City of Cleveland, citing the plaintiff's failure to meet her burden of producing sufficient evidence to demonstrate that the City's training of its police officers was inadequate;

2. Dismissing the conspiracy claim as against Officers Clark and Rose, citing the plaintiff's failure to put forth any facts or evidence which would support such a claim;

3. Denying summary judgment with respect to the § 1983 claims and state law tort claims as against Officers Clark and Rose, reasoning that there is a genuine issue of material fact with regard to who shot and killed Mr. Robinson; and

4. Denying Officer Clark's claim for relief because of insufficient service, recommending that Officer Clark was in fact properly served.

Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636 (b)(1)(C), this Court reviews de

7

novo those portions of the Magistrate Judge's R&R to which specific objections are made.  Upon review, this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  In the Sixth Circuit, objections to a magistrate judge's R&R "must be clear enough to enable the district court to discern those issues that are dispositive and contentious."  Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).  Further, "a general objection to the entirety of the magistrate's report has the same effects as would a failure to object."  Howard v. Sec'y of Health and Human Servs., 932 F.2d 505, 509 (6th Cir. 1991).

The plaintiff did not file an objection with respect to Magistrate Judge McHargh's recommendation that the conspiracy claim asserted against Officers Clark and Rose and the § 1983 claim asserted against the City of Cleveland be dismissed.  The Court will adopt these recommendations.

The defendants filed objections to Magistrate Judge McHargh's recommendation that the § 1983 claim and state law tort claims asserted against Officers Clark and Rose survive the motion for summary judgment.  Both officers argue that the R&R erroneously concluded that there is a material issue of genuine fact with respect to who shot Mr. Robinson, and that there is overwhelming, undisputed evidence that Officer Clark fired the fatal shot.  Based on this argument, the defendants' objections assert that the § 1983 claim and state law claims against Officer Rose should be dismissed because he did not shoot and kill Mr. Robinson.  Further, with regard to the § 1983 claim against Officer Clark, the defendants' objections assert there was no constitutional violation of unreasonable seizure because the use of deadly force was reasonable under the circumstances.  Finally, the defendants' brief argues that the R&R

8

misinterprets the federal statute permitting service of process by a state court after removal.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indust. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex v. Catrett, 477 U.S. 317, 323 (1986); Betkerur v. Aultman Hosp. Ass'n., 78 F.3d 1079, 1087 (6th Cir. 1996).  The non-moving party must then "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotations and citations omitted).

## III.  LAW AND ANALYSIS

The Court first addresses the § 1983 claim for unreasonable seizure and excessive use of deadly force and the state law tort claims asserted by the plaintiff against Officers Clark and Rose.  The Court next addresses the insufficient service

9

defense raised by Officer Clark in his reply brief to plaintiff's opposition to summary judgment.

As neither party raised objections to Magistrate McHargh's recommendation to dismiss the § 1983 claim asserted against the City of Cleveland and the conspiracy claim asserted against Officers Clark and Rose, the Court will not review those recommendations de novo and they will be adopted without further review.  See Howard, 932 F.2d at 510.

**A.  § 1983 claims asserted against Officers Clark and Rose**

"Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law." Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005).  The plaintiff claims Officers Clark and Rose deprived the decedent of his right to be free from unreasonable seizures by the use of deadly force in violation of the Fourth and Fourteenth Amendments.  (Docket No. 1, Ex. A).  Officer Rose urges the Court to dispose of the § 1983 claim asserted against him through summary judgment on the grounds that Officer Clark, not Officer Rose, shot the single bullet that killed Mr. Robinson.  (Docket No. 37 at 14).  Officer Clark urges the Court to dispose of the § 1983 claim against him on the grounds that his conduct did not violate a clearly established right and is therefore shielded by the doctrine of qualified immunity.  Id.

10

### 1.  Qualified immunity standard

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "The privilege is an immunity from suit rather than a mere defense to liability."  Saucier v. Katz, 533 U.S. 194, 200 (2001).  Whether qualified immunity applies to an official's actions is a question of law.  Barrett v. Steubenville City Sch, 388 F.3d 967, 970 (6th Cir. 2004).

The Supreme Court requires a two-step inquiry when ruling on a motion for summary judgment based on a claim of qualified immunity to a § 1983 charge: "(1) whether considering the allegations in a light most favorable to the party injured, [has] a constitutional right ... been violated, and (2) [has] that right [been] clearly established."  Estate of Carter v. City of Detroit, 408 F.3d 305, 310-11 (6th Cir. 2005) (quoting Saucier, 533 U.S. at 201).[1]  The Court decides the issue of immunity on the basis of the pleadings and discovery.  If there is a genuine issue of material fact "involving the question on which immunity turns, then summary disposition is improper and the case must go to trial."  Heflin v. Steart County, Tenn., 958 F.2d 709, 717 (6th Cir. 1992).

### 2.  Qualified immunity analysis

Taking the facts in a light most favorable to the plaintiff, the Court finds that the

---

[1] The Sixth Circuit explains: "Panels of this court occasionally employ a three-step qualified immunity analysis, as opposed to the two-step analysis set forth here.  As two recent opinions indicate, both the two-step approach and the three-step approach can be said to capture the holding of Saucier v. Katz."  Estate of Carter, 408 F.3d at 311 n. 2 (citation omitted).

11

depositions and documentary evidence presented to the Court demonstrate genuine issues of material facts, and such factual disputes preclude a summary disposition on the basis of qualified immunity.

The U.S. Supreme Court holds that an apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment. Tennessee v. Garner, 471 U.S. 1, 9 (1985).  "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. * * * A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."  Id at 11.  However, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."  Id.

The unanswered questions before this Court are which officer shot Mr. Robinson, and whether that officer had probable cause to believe that Mr. Robinson posed a threat of serious physical harm to the officer or others.  Deposition transcripts from four individuals offers varying accounts of the events immediately preceding and following Mr. Robinson's death.  Both Officers Clark and Rose testify that Officer Clark shot Brandon Robinson, and that Mr. Robinson was straddling on top of and facing Officer Clark when he was shot.  Officer Rose further testified at his deposition that at no point in his attempt to assist Officer Clark in detaining Mr. Robinson did he pull his weapon from his holster.

In addition to the above testimony, the plaintiff produced a copy of the coroner's

12

report which provided the results of a testfire performed with a Smith and Wesson 9mm Semi-automatic handgun, model number 5943, serial number VED5629 (Docket No. 38, Ex. C), and the defendants presented a signed statement by Officer Clark asserting that this weapon is his city-issued weapon (Docket No. 54, Ex. 1).

Courtney Mays, who was handcuffed standing at his vehicle at the time Mr. Robinson was shot, testified in his deposition that he did not see who shot Mr. Robinson because he was facing in the opposite direction from the location of the officers and Mr. Robinson.  Although Mr. Mays testimony does not directly contradict the testimony of the officers with respect to who shot Mr. Robinson, Mr. Mays did testify that upon hearing the gunshot, he immediately turned around and saw Mr. Robinson on his knees, Officer Clark laying on his belly *behind* Mr. Robinson, pushing himself up off the ground in a pushup motion and retrieving his firearm off the ground, and Officer Rose standing *in front* of Mr. Robinson pointing his gun at the decedent.  This testimony creates a genuine issue of material fact with respect to who shot Mr. Robinson because the coroner's report indicates the bullet entered Mr. Robinson's chest, not his back.

Finally, Ms Mathis testified that although she did not hear the gun blast or see the gun smoke or flare, she did see Officer Clark on top of Mr. Robinson with his knee on him at the time of the shooting, and that immediately after the shooting Officer Rose was shaking his hand in such a way that led Ms Mathis to believe he had fired his weapon.

Based on the disputed facts as to the positioning of the officers at the time of the shooting and as to who shot Mr. Robinson, the Court cannot complete either step of the

13

qualified immunity analysis.  This inquiry determines as a matter of law whether a constitutional right has been violated and whether it would be clear to a reasonable officer that his conduct violates that right.  <u>Saucier</u>, 533 U.S. at 201-02.  To determine if Mr. Robinson's constitutional right to be free from an unreasonable seizure by use of deadly force was violated and if a reasonable officer would understand that the shooting violated Mr. Robinson's right, the Court would first need to know with certainty who shot Mr. Robinson.  Absent that key fact, the Court is not in a position to rule as a matter of law on the question of qualified immunity.

In light of the testimony of the four witnesses and other evidence on the record, the factual disputes before the Court create a genuine issue of material fact on which qualified immunity is based.  Accordingly, summary judgment is improper for the § 1983 claims asserted against Officers Clark and Rose, and these claims should be reserved for a jury.

**B.  State law claims asserted against Officers Rose and Clark**

The R&R recommends that the defendants' motion for summary judgment be denied as to the plaintiff's state law tort claims of wrongful death, willful, wanton, and reckless conduct, assault and battery, and the survivorship action.  (Docket No. 49 at 36).  The R&R relies on Ohio Revised Code § 2744.3(A)(6), which provides that a municipal employee is immune from civil liability for injury, death, or loss to person unless the employee's acts were with malicious purpose, in bad faith, or in a wanton or reckless manner.  The defendants object to this recommendation with respect to the

14

claims as against Officer Rose on the grounds that Officer Rose never fired his weapon and therefore could be held liable for an act he did not commit.  (Docket No. 51).

For the same reason that the § 1983 claims against the officers must survive summary judgment, so must the state law claims.  The Court cannot determine whether the officer who shot and killed Brandon Robinson acted maliciously, in bad faith, or in a wanton or reckless manner if the Court is not certain as to who that individual is.  Just as a jury must decide who is responsible for Mr. Robinson's death, so must that jury decide with what purpose or motive the act was committed.

Furthermore, because the defendants' objections never refute the R&R's recommendation regarding the state law claims as against Officer Clark, these claims shall survive summary judgment.

**C.  Insufficient service of process defense asserted by Officer Clark**

In Officer Clark's reply brief to the plaintiff's opposition to summary judgment, Officer Clark asserts that he "was never served with a copy of the summons and complaint."  (Docket No. 41 at 7).  This statement is not entirely accurate.  The City of Cleveland filed its notice of removal with the state court on 19 March 2004, the very same day that the Cuyahoga County Clerk of Courts sent by certified mail the summons and complaint to all named defendants (the City of Cleveland, Officer Clark, and Officer Rose.  The county docket shows that Officer Clark received the summons and complaint on 22 March 2004.

Title 28 U.S.C. § 1448 provides:

> In all cases removed from any State court to any district court of the
> United States in which any or more of the defendants has not been
> served with process or in which the service has not been perfected
> prior to removal, or in which process served proves to be defective,
> such process or service may be completed or new process issued in
> the same manner as in cases originally filed in such district court.

The R&R recommends that service on Clark was proper, interpreting § 1448 as permitting service of process under state rule if the process was begun prior to removal. (Docket No. 49 at 17).  Moreover, the R&R recommends that Officer Clark involuntarily invoked the jurisdiction of the Court through his extensive participation in this litigation, and that such participation implicitly waived his defense of insufficient service.  Id. at 17-18.  Officer Clark objected to this recommendation, arguing that § 1448 required the plaintiff to issue a new summons and complaint under the jurisdiction of this Court after removal.  The objection reasons that "[t]he phrase 'in the same manner as in cases originally filed in such district court' [in § 1448] modifies both phrases 'may be completed' and 'or new process issued.'" (Docket No. 56 at 2).

The Court agrees with Magistrate Judge McHargh's reasoning that Officer Clark implicitly waived this defense by failing to actively contest the Court's jurisdiction.[2]

---

[2]  Although not binding on this Court, the Seventh Circuit set forth a persuasive analysis in a case with similar facts:

> Federal Rule of Civil Procedure 12(h)(1) provides that '[a] defense of lack of jurisdiction over the person *** is waived *** if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 1(a) to be made as a matter of course.'  The defendants did raise the defense in their answer, and therefore the waiver provide for by Rule 12(h) did not occur.  However, the privileged defenses referred to in Rule 12(h)(1) may be waived by formal submission in a cause, or by submission through conduct.  See Burton v. Northern Dutchess Hosp., 106 F.R.D. 477, 481 (S.D.N.Y. 1985) (asserting jurisdictional defect in answer does 'not preserve the defense in perpetuity.').  Indeed, a party need

16

Officer Clark was served by the Cuyahoga County Clerk of Courts, where this matter was initially filed, and was therefore put on notice that such claims were asserted against him.  (Docket No. 41, Ex.).  On 8 April 2004, he consented to removal to this Court.  (Docket No. 5).  Officer Clark had ample opportunity to challenge the Court's jurisdiction in the past 2 1/2 years, but did not do so.  Along with his co-defendants, Officer Clark actively defended himself against the plaintiff's allegations, participating through counsel in the case management conference, two telephonic status conferences, extensive discovery, a settlement conference, and the filing of a motion for summary judgment.  Through all this activity, the issue of service was never raised other than as one of a laundry list of defenses asserted in his initial answer to the complaint (Docket No. 4), and then seemingly in an afterthought, in a reply brief to the plaintiff's opposition to summary judgment (Docket No. 41).

Allowing the defendant to assert this claim so late in this stage of the litigation is far too prejudicial against the plaintiff.  Furthermore, there is no evidence that Officer

---

not actually file an answer or motion before waiver is found.

Here, the defendants fully participated in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction.  They participated in lengthy discovery, filed various motions and opposed a number of motions filed by the bank.  While the defendants literally complied with Rule 12(h), they did not comply with the spirit of the rule which is to expedite and simplify proceedings in the Federal Courts.  The district court could properly conclude that the defendants' delay in urging this threshold issue manifests an intent to submit to the court's jurisdiction.

Continental Bank, N.A. v. Meyer, 10 F.3d 1293, 1296 (7th Cir. 1993) (most citations omitted).

Clark has been prejudiced by the timing of the process of service or was unaware of the claims raised against him by Ms Reed.  Officer Clark's level of participation in this litigation manifested his intentions to submit to the Court's jurisdiction.  Accordingly, the Court denies this defense.

### III.  CONCLUSION

For the reasons set forth above, the Court adopts the recommendations of the Magistrate Judge and grants in part and denies in part the defendants' motion for summary judgment.

The § 1983 claim asserted against the City of Cleveland for failure to adequately train and supervise its police officers and the state law conspiracy claim asserted against Officers Clark and Rose are both dismissed as a matter of law.

Because there is a genuine issue of material fact with respect to the actions surrounding the death of Brandon Robinson, summary judgment on the § 1983 claims and state law tort claims asserted against Officers Clark and Rose is inappropriate and these claims will proceed to trial.

Finally, Officer Clark's claim for relief on the basis of insufficient service is not well taken and is denied.

IT IS SO ORDERED.

                                                    /s/Lesley Wells                                      
                                                  UNITED STATES DISTRICT JUDGE

Date: 3 January 2007